

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

**FILED**

JUL 2 7 2020

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

Pao Hue Yeng Xiong                    ,

(Enter the full name of the plaintiff.)

v.

Case No. CIV-20-726-F

(Court Clerk will insert case number)

(1) William "Billy" McCormick        ,

(2) Katie Freeman                    ,

(3) Nicholas Gambel                  .

(Enter the full name of each defendant. Attach
additional sheets as necessary.)

## PRO SE PRISONER CIVIL RIGHTS COMPLAINT

### Initial Instructions

1.    You must type or legibly handwrite the Complaint, and you must answer all questions concisely and in the proper space. Where more space is needed to answer any question, you may attach a separate sheet.

2.    You must provide a full name for each defendant and describe where that defendant resides or can be located.

3.    You must send the original complaint and one copy to the Clerk of the District Court.

4.    You must pay an initial fee of $400 (including a $350 filing fee and a $50 administrative fee). The complaint will not be considered filed until the Clerk receives the $400 fee or you are granted permission to proceed *in forma pauperis*.

5.    If you cannot prepay the $400 fee, you may request permission to proceed *in forma pauperis* in accordance with the procedures set forth in the Court's form application to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915; Local Civil Rule 3.3.

Rev. 10/20/2015

(4) Robert Simmons,
(5) Joshua Lepird,
(6) Jennifer Turnage,
(7) Keri Avant,
(8) FNU Alberts,
(9) Thomas J. Scarantino.

**II.**    **State whether you are a:**

___ Convicted and sentenced state prisoner

_X_ Convicted and sentenced federal prisoner

___ Pretrial detainee

___ Immigration detainee

___ Civilly committed detainee

___ Other (please explain) _____

**III.**    **Previous Federal Civil Actions or Appeals**

List each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility.

1. Prior Civil Action/Appeal No. 1

   a. Parties to previous lawsuit:

      Plaintiff(s): _Pao Hue Yeng Xiong_____

      Defendant(s): _William "Billy" Mc Cormick et al._____

      _____

   b. Court and docket number: _CIV-17-873-J °H.D. Oklahoma,_

   c. Approximate date of filing: _August 10, 2017._____

   d. Issues raised: _1st Amendment Viewpoint Discrimination, Retaliation, Compelled Silence 'C Speech, Right To Petition Retaliatory Transfer, 5th Amendment Equal Protection, Class of One Selective Enforcement._

   e. Disposition (for example:  Did you win? Was the case dismissed? Was summary judgment entered against you?  Is the case still pending?  Did you appeal?): _Dismissed w/o prejudice for failure to state a claim and unavailability of 1st Amendment BIVIND remedy,_

   f. Approximate date of disposition: _January 17, 2020,_____

If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on a separate sheet(s).

2. Prior Civil Action
   (a) Plaintiff: Pao Hue Yeng Xiong
       Defendants: William "Billy" McCormick
                   Jeff Lepard
                   Keri Avant
   (b) Court & Docket #: W.D. Oklahoma " CIV-17-872-R
   (c) Approximate date of filing: August 10, 2017
   (d) Issues raised: Federal prison official's actions pursuant
                      to 5 U.S.C. § 706 (2)(A)(2)(B) and (2)(D),
   (e) Disposition:  Dismissed due to lack of Art. III standing. [Still
                     pending 5-6-20 59(e) motion.]
   (f) Approximate Date of Disposition: April 8, 2020.

3. Prior Civil Action
   (a) Plaintiff(s): Pao Hue Yeng Xiong
       Defendants: William "Billy" McCormick
                   Jennifer Turnage
   (b) Court & Docket #: W.D. Oklahoma " CIV-17-875-R
   (c) Approximate date of filing: August 10, 2017
   (d) Issues raised: Federal prison official's actions pursuant to
                      5 U.S.C. § 706 (2)(A),(2)(B),(2)(D), and (2)(E).
   (e) Disposition:  Dismissed. Appealing: Case #19-6163.

   (f) Approximate Date of Disposition: June 14, 2018 and May 3,
                                        2019.



4. Prior Civil Action
   (a) Plaintiff: Pao Hue Yeng Xiong
      Defendants: Federal Bureau of Prisons
               Warden K. Meyers
               Inmate Systems Manager FNU Clayton
               Unit Manager K. Maxey
   (b) Court & Docket #: W.D. Louisiana, 2:18-cv-00776-DDD-KK
   (c) Approximate date of filing: June 8, 2018
   (d) Issues raised: Temporary Restraining Order to acquire
              discovery material and other legal material
              for jury trial.
   (e) Disposition: Dismissed.
   (f) Approximate Date of Disposition: July 26, 2018

5. Prior Civil Action
   (a) Plaintiff: Pao Hue Yeng Xiong
      Defendant: David Paul
   (b) Court & Docket #: S.D. Mississippi, 3:19-cv-00770-TSL-RHW
   (c) Approximate date of filing: October 24, 2018
   (d) Issues raised: 5th Amendment Due Process Clause Violation-
            Impartial Tribunal; Accardi & American Farm Lines
           Violation; Illegal Application Of 28 C.F.R. § 541.3
           (a).
   (e) Disposition: Pending U.S. judge's report & recommendation.
   (f) Approximate Date of Disposition: n/a

6. Prior Civil Action
   (a) Plaintiff: Pao Hue Yeng Xiong
       Defendants: David Paul
   (b) Court & Docket #: S.D. Mississippi; 3:19-cv-00942-TSL-RHW
   (c) Approximate date of filing: December 27, 2019
   (d) Issues raised: Accardi & American Farm lines Violation° 5th
                      Amendment Due Process Clause - Impartial Tribunal
   (e) Disposition: Pending U.S. judge's report & recommendation.
   (f) Approximate Date of Disposition: n/a

7. Prior Civil Action
   (a) Plaintiff: Pao Hue Yeng Xiong
       Defendants: David Paul
   (b) Court & Docket #: S.D. Mississippi; 3:20-cv-00109-CWR-FKB
   (c) Approximate date of filing: February 25, 2020
   (d) Issues raised: Wolff v. McDonnell, 418 U.S. 539, 563-564 (1974)
                      5th Amendment Due Process violation° Accardi v.
                      Shaughnessy, 347 U.S. 260, 266-268 (1954) and
                      American farm lines v. Black Ball Freight, 397 U.S.
                      532, 538-539 (1970) procedural Due Process violation°
                      Schmuck v. United States, 489 U.S. 705, 715-721 (1989)
                      constructive amendment.
   (e) Disposition: Pending action of U.S. judge Ball (report & recommendation).
   (f) Approximate Date of Disposition: n/a

## IV.   Parties to Current Lawsuit

State information about yourself and each person or company listed as a defendant in the caption (the heading) of this complaint.

1.   Plaintiff

Name and any aliases: _Pao Hue Yeng Xiong_

Address: _Federal Correctional Complex, P.O. Box 5666, Yazoo City, MS 39194_

Inmate No.: _08893-089_

2.   Defendant No. 1

Name and official position: _William "Billy" McCormick,_
_An apparently retired federal prison correctional counselor,_

Place of employment and/or residence: _Unknown._

How is this person sued?  ( ) official capacity, (X) individual capacity, ( ) both

3.   Defendant No. 2

Name and official position: _Katie Freeman_
_Federal prison unit manager,_

Place of employment and/or residence: _Federal Correctional Institute_
_El Reno, 4205 West U.S. Hwy 66, El Reno, OK 73036_

How is this person sued?  ( ) official capacity, (X) individual capacity, ( ) both

If there are more than two defendants, describe the additional defendants using this same format on a separate sheet(s).

4. Defendant No. 3
Name & Official Position: Nicholas Gambel
Federal prison case manager.
Place of Employment: Federal Correctional Institute El Reno, 4205
West U.S. Hwy 66, El Reno, OK 73036
How is this person sued? Individual capacity.

5. Defendant No. 4
Name & Official Position: Robert Simmons
Federal prison correctional officer.
Place of Employment: Federal Correctional Institute El Reno, 4205
West U.S. Hwy 66, El Reno, OK 73036
How is this person sued? Individual capacity.

6. Defendant No. 5
Name & Official Position: Joshua Lepird
Federal prison correctional counselor.
Place of Employment: Federal Correctional Institute El Reno, 4205
West U.S. Hwy 66, El Reno, OK 73036
How is this person sued? Individual capacity.

7. Defendant No. 6
Name & Official Position: Jennifer Turnage
Federal prison case manager.
Place of Employment: Federal Correctional Institute El Reno, 4205

West U.S. Hwy 66, El Reno, OK 73036
How is this person sued? Individual capacity.

8. Defendant No. 7
Name & Official Position: Keri Avant
Federal prison unit secretary.
Place of Employment: Federal Correctional Institute El Reno,
4205 West U.S. Hwy 66, El Reno, OK 73036
How is this person sued? Individual capacity.

9. Defendant No. 8
Name & Official Position: FNU Alberts
An apparently retired federal prison camp administrator and
administrative remedy coordinator.
Place of employment and/or residence: Unknown.
How is this person sued? Individual capacity.

10. Defendant No. 9
Name & Official Position: Thomas J. Scarantino
An apparently retired federal prison warden.
Place of employment and/or residence: Unknown.
How is this person sued? Individual capacity.

## V.   Cause of Action

<u>Instructions</u>

1.   *Provide a short and plain statement of each claim.*

   - Describe the facts that are the basis for your claim.

   - You can generally only sue defendants who were directly involved in harming you.  Describe how each defendant violated your rights, giving dates and places.

   - Explain how you were hurt and the extent of your injuries.

2.   *You are not required to cite case law.*

   - Describe the constitutional or statutory rights you believe the defendant(s) violated.

   - At this stage in the proceedings, you do not need to cite or discuss any case law.

3.   *You are not required to attach exhibits.*

   - If you do attach exhibits, you should refer to the exhibits in the statement of your claim and explain why you included them.

4.   *Be aware of the requirement that you exhaust prison grievance procedures **before** filing your lawsuit.*

   - If the evidence shows that you did not fully comply with an available prison grievance process prior to filing this lawsuit, the court may dismiss the unexhausted claim(s) or grant judgment against you.  *See* 42 U.S.C. § 1997e(a).

   - Every claim you raise must be exhausted in the appropriate manner.

5.   *Be aware of any statute of limitations.*

   - If you are suing about events that happened in the past, your case may be subject to dismissal under the statute of limitations.  For example, for many civil rights claims, an action must be brought within two years from the date when the plaintiff knew or had reason to know of the injury that is the basis for the claim.

6.   *Do not include claims relating to your criminal conviction or to prison disciplinary proceedings that resulted in loss of good time credits.*

- If a ruling in your favor "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims in a civil rights complaint unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding.

<u>Claims</u>

List the federal right(s) that you believe have been violated, and describe what happened. Each alleged violation of a federal right should be listed separately as its own claim.

1.   **Claim 1:**

(1)   List the right that you believe was violated:

1st Amendment : Freedom of thought, expression, and verbal speech.

Legal Theory : Viewpoint Discrimination.

(2)   List the defendant(s) to this claim:  (If you have sued more than one defendant, specify each person or entity that is a defendant for this particular claim.)

Katie Freeman

Nicholas Gamble

William "Billy" McCormick

(3)   List the supporting facts:

Please See "Cause Of Action" ¶¶ 1-8.

_____

_____

_____

(4)   Relief requested:  (State briefly exactly what you want the court to do for you.)

Punitive Damages: $250,000 per defendant per constitutional violation. Nominal Damages: $10,000 per defendant per constitutional violation. Compensatory Damages: $100,000 per defendant per constitutional violation.

## 2.   Claim II:

(1)   List the right that you believe was violated:

1st Amendment: Freedom of thought, expression, and verbal speech. Legal Theory: 1st Amendment Retaliation

_____

_____

(2)   List the defendant(s) to this claim:  (If you have sued more than one defendant, specify each person or entity that is a defendant for this particular claim.)

Katie Freeman

Nicholas Gamble

William "Billy" McCormick

_____

(3)   List the supporting facts:

Please See "Cause Of Action" ¶¶ 1-7, 9.

_____

_____

_____

(4)   Relief requested:  (State briefly exactly what you want the court to do for you.)

Punitive Damages: $250,000 per defendant per constitutional violation. Nominal Damages: $10,000 per defendant per constitutional violation. Compensatory Damages: $100,000 per defendant per constitutional violation.

If there are more than two claims that you wish to assert, describe the additional claims using this same format on a separate sheet(s).

## VI.   Declarations

I declare under penalty of perjury that the foregoing is true and correct.

Pao Hue Yang Xiong
Plaintiff's signature

July 21 , 2020
Date

I further declare under penalty of perjury that I placed this complaint in the prison's legal mail system, with the correct postage attached, on the _21_ day of _July_ , 20_20_.

Pao Hue Yang Xiong
Plaintiff's signature

July 21 , 2020
Date

3. Claim III

(1) List the right that you believe was violated:

5th Amendment: Equal Protection Clause

Legal Theory: Selective Enforcement via Class-of-One

(2) List the defendant(s) to this claim:

William "Billy" McCormick

Joshua Lepird

Keri Avant

(3) List the supporting facts:

Please See "Cause Of Action" ¶¶ 1-7, 10.

(4) Relief requested:

Punitive Damages: $250,000 per defendant per constitutional violation, Nominal Damages: $10,000 per defendant per constitutional violation, Compensatory Damages: $100,000 per defendant per constitutional violation.

4. Claim IV

(1) List the right that you believe was violated:

1st Amendment: Freedom of thought, expression, and verbal speech.

Legal Theory: Compelled speech and silence (but not limited too).

(2) List the defendant(s) to this claim:

Katie Freeman

Nicholas Gambel

William "Billy" McCormick

Robert Simmons

Joshua Lepird
Keri Avant
Jennifer Turnage
FNU Alberts
Thomas J. Scarantino
(3) List the supporting facts:
Please See "Cause Of Action" ¶ ¶ 1-7, 11.
(4) Relief requested:
Punitive Damages: $250,000 per defendant per constitutional violation. Nominal Damages: $10,000 per defendant per constitutional violation. Compensatory Damages: $100,000 per defendant per constitutional violation.

5. Claim V
(1) List the right that you believe was violated:
1st Amendment: Right-to-petition the government for redress.
Legal Theory: 1st Amendment Retaliation
(2) List the defendants to this claim:
Nicholas Gambel and Robert Simmons
(3) List the supporting facts:
Please See "Claim For Relief" ¶ ¶ 1-7, 13.
(4) Relief requested:
Punitive Damages: $250,000 per defendant per constitutional violation. Nominal Damages: $10,000 per defendant per constitutional violation. Compensatory Damages: $100,000 per defendant per constitutional violation.

60 Claim VI

(1) List the right that you believe was violated:

1st Amendment: Freedom of thought, expression, verbal speech, and the right-to-petition the government for redress.

Legal Theory: 1st Amendment retaliatory transfer.

(2) List the defendants to this claim:

Katie Freeman

Nicholas Gambel

William "Billy" McCormick

Robert Simmons

Joshua Lepird

Jennifer Turnage

Keri Avant

FNU Alberts

Thomas J. Scarantino

(3) List the supporting facts:

Please See "Cause Of Action" ¶¶ 1-7, 12.

(4) Relief requested:

Punitive Damages: $250,000 per defendant per constitutional violation.

Nominal Damages: $250,000 per defendant per constitutional violation.

Compensatory Damages: $100,000 per defendant per constitutional violation.

7. Claim III
   (1) List the right that you believe was violated:
   5th Amendment: Equal Protection Clause
   Legal Theory: Selective Enforcement via Class-of-One.
   (2) List the defendant(s) to this claim:
   William "Billy" McCormick
   Jennifer Turnage
   (3) List the supporting facts:
   Please See "Cause Of Action" ¶¶ 1-7, 14.
   (4) Relief requested:
   Punitive Damages: $250,000 per defendant per constitutional
   Violation, Nominal Damages: $10,000 per defendant per constitutional
   violation. Compensatory Damages: $100,000 per defendant per
   constitutional violation.


   F. R. Civ. P.  38


   Xiong is requesting a jury trial rather than a bench trial.

## Abbreviation Legend

"Xiong"- refers to Pao Hue Yeng Xiong, the plaintiff in the instant action.

"McCormick"- refers to William "Billy" McCormick, a defendant in the instant action.

"Freeman"- refers to Katie Freeman, a defendant in the instant action.

"Gambel"- refers to Nicholas Gambel, a defendant in the instant action.

"Simmons"- refers to Robert Simmons, a defendant in the instant action.

"Lepird"- refers to Joshua Lepird, a defendant in the instant action.

"Turnage"- refers to Jennifer Turnage, a defendant in the instant action.

"Avant"- refers to Keri Avant, a defendant in the instant action.

"Alberts"- refers to FNU Alberts, a defendant in the instant action.

"Scarantino"- refers to Thomas J. Scarantino, a defendant in the instant action.

"FPO"- refers to federal prison official.

"ERE"- refers to the federal prisons of El Reno, OK.

"IR"- refers to incident report.

"Team"- refers to the 2-12-15 program review where Xiong, Freeman, Gambel, and McCormick participated in.

"2798929"- refers to the 2-12-15 IR authored by Gambel for prohibited act 306.

"FBOP"- refers to Federal Bureau of Prison.

"306"- refers to prohibited act 306 as identified in 28 C.F.R. § 541.3.

"C.F.R."- refers to the Code of Federal Regulations.

"PS"- refers to the FBOPs internal policy called program statements.

"U.S.C."- refers to the United States Code.

"FPC"- refers to federal prison camp.

"John Doe"- refers to a ERE FPC black prisoner similarly situated to Xiong.

"Dow"- refers to FPO Shannon Dow, 1 of 2 of Xiong's book

"312" - refers to prohibited act 312 as identified in 28 C.F.R. 8541.3,

"U/T" - refers to unit team,

"IDP" - refers to the FBOPs inmate discipline program promulgated as 28 C.F.R. 8541.

"UDC" - refers to unit discipline committee,

"A&O" - refers to admission & orientation,

"SHU" - refers to special housing unit.

\* "Practice" - refers to the ERE without of FPOs incompassing zero tolerance of any speech offending FPOs, irrespective of it being legal). \*

"305" - refers to prohibited act 305 as identified in 28 C.F.R. 8541.3,

"2158590" - refers to the 9-8-15 IR authored by Simmons for 305,

"BP-9" - refers to the FBOPs institutional level administrative remedy form.

"A.R." - refers to administrative remedies.

"835435" - refers to the A.R. # for 2148929.

"849624" - refers to the A.R. # for 2158590,

"BP-A0148" - refers to the FBOPs request to staff form,

"Defendants" - refers to the defendants of the instant action.

"CC" - refers to correctional counselor.

"CM" - refers to case manager,

"US" - refers to unit secretary.

"UM" - refers to unit manager.

"EMS-409.051" - refers to the request for transfer form of the FBOP.

"Ramirez" - refers to Carlos Ramirez, an inmate designated to the same room as Xiong.

"108" - refers to prohibited act 108 as identified in 28 C.F.R. 8541.3,

"Melsek" - refers to FNU Melsek, a union FPO that works in the ERE kitchens,

"Lt. Ramirez" - refers to a ERE lieutenant named FNU Ramirez.

Pao Hue Yeng Xiong

Federal Correctional Complex
P.O. Box 5666
Yazoo City, MS 39194

Pro Se

---

Pao Hue Yeng Xiong,
                 Plaintiff,


v.                                    Case No.


William "Billy" McCormick et. al.,
                    Defendants.

---

Bivens v. Six Unknown Named Agents of Federal Bureau
of Narcotics, 403 U.S. 388 (1971) — Cause Of Action

---

1. Between 8-12-15 through 10-13-15, during the time frame of
   Xiong's constitutional rights being violated, McCormick, Freeman,
   Gambel, Simmons, Lepird, Turnage, Avant, Alberts, and Scarantino
   were employed by the U.S. federal government as FPOs at ERE where
   Xiong was designated as a federal prisoner.

2. On 8·12·15, between approximately 9:55 a.m. and 11:00 a.m., Xiong participated in Team scheduled for 10:00 a.m. in conjunction with Freeman, Gambel, and McCormick.

3. Xiong was subject to a pretextual IR for his constitutionally protected speech activities during Team.

4. 2748929 is a direct result of Xiong's decision to remain silent and reading nonchalant and indifferent to McCormick's ranting and unsubtle threats of a higher-security prison transfer from Gambel and Freeman; discriminating directly against Xiong's perspective on the event as it unfolded, expressed by his decision to remain silent, nonchalant, and indifferent to how offended McCormick, Gambel, and Freeman were by Xiong's speech activities in direct response to said ranting and threats.

5. Said activities encompassed his decision to be nonchalant in light of McCormick's ranting and Gambel and Freeman's then threat of a higher prison security transfer and refusing to apologize for not attending Team prior to 10:00 a.m. when McCormick, Gambel, and Freeman were ready, offending them.

6. Additionally, McCormick, Gambel, and Freeman were further offended after Xiong's reactions upon being notified 2748929 would be administratively prosecuted,           in the following manner:

7. Said reactions were expressed ⌃ Xiong remained nonchalant in conjunction with stating that nothing he says or does would stop 2748929 from being prosecuted in response to Freeman's question if Xiong even cared about 2748929 being issued in light of his speech activities.

2

8. McCormick, Gambel, and Freeman violated Xiong's 1st amendment right to freedom of speech in the context of viewpoint discrimination since, among other things:

   (a) Xiong's aforementioned speech activities are a direct result of his values, political perspective & values, and experiences with FBOP officials which, in conjunction with being consistant with any legitimate penological interests, is protected speech.

   (b) McCormick, Gambel, and Freeman knew or should have known they couldn't issue 2748929 in light of 28 C.F.R. §§ 551.90, 541.1, and 541.3 (a): 306.

   (c) Xiong didn't commit prohibited act 306 since the allegations in 2748929 don't correspond with the text of 306. Specifically, being late isn't refusing, and Team isn't a program or work.

   (d) No FBOP C.F.R.s or PSs prohibits or regulates Xiong's speech activities in question.

   (e) No penological interest, identified, described, or implied by U.S.C.s, FBOP C.F.R.s or PSs can establish any reasonable or rational basis for McCormick, Gambel, or Freeman's actions.

   (f) McCormick, Gambel, and Freeman specifically reacted as identified above because of Xiong's speech activities.

9. McCormick, Gambel, and Freeman violated Xiong's 1st amendment right to freedom of speech in the context of retaliation in the aforementioned situation since, among other things:

   (a) Xiong's speech activities (¶¶ 2-7) is constitutionally protected.

3

(b) Gambel unsubtly threatened Xiong with a higher prison security transfer after Xiong reacted nonchalantly to McCormick's taunting that conveyed how McCormick, Gambel, and Freeman collectively felt about Xiong not being present at Team when Freeman, Gambel, and McCormick were ready. Gambel also notified Xiong 2748929 was being issued as a result of allegedly being late to Team. Gambel intended to follow through with the aforementioned transfer but was negligent in revising the administrative custody points in a timely manner to do so. 2748929 is a pretextual IR, blu ¶¶ 3-5. Gambel was further ordered to issue 2748929.

(c) Freeman directed and authorized 2748929 as a direct result of Xiong's aforementioned speech activities (JU ¶¶ 3-7) that directly clashed with the culture being implemented at ERE FPC by Freeman (which encompassed zero tolerance of any speech offending FPCs irrespective of being constitutionally permissible), an action designed to silence Xiong's speech activities.

(d) McCormick created a memorandum to corroborate the pretextual 2748929 and subsequently participated in the 2748929 prison disciplinary hearing to impose his will to guarantee a finding of guilt.

(e) McCormick was visibly upset he was ordered to search and retrieve Xiong for Team by Freeman, compounded when Xiong decided to dispose his lunch tray in the appropriate manner versus departing immediately

for Team upon his interaction with McCormick.

(f) McCormick's ranting began during the aforementioned situation and led into the beginning of Team as a direct result of Xong's aforementioned decision.

10. On 8-19-15, during the 2748929 prison disciplinary hearing, McCormick, Lepird, and Avant violated Xiong's 5th amendment right to equal protection in the context of selective enforcement; a class-of-one, since, among other things:

(a) Xiong was issued 2748929 for committing 306 for allegations of an untimely arrival to Team which included Gambel, who authored 2748929.

(b) John Doe was issued a IR for committing 306 for allegations of an untimely arrival to program review involving Gambel, who authored said IR.

(c) John Doe's IR was (1) expunged and (2) done informally, i.e., expunged on the condition extra duty was performed.

(d) 2748929 wasn't expunged nor was it allowed to be conditionally expunged even though Dow advocated for such a resolution for Xiong, to Gambel. Dow informed Xiong that 2748929 wouldn't be expunged, conditionally or otherwise, since (1) Xiong was extremely disrespectful at Team and (2) Freeman authorized and directed Gambel to issue 2748929.

(e) The fact Freeman, Gambel, nor McCormick felt Xiong's

"disrespectful" conduct at Team didn't warrant 312 identifies
his conduct was offensive than disrespectful.
(f) Said conduct was Xiong's speech activities (¶¶ 2-9),
offensive or not, can't justify 2748929 (¶ 8 (d)-(e)) and
the fact Gambel (corroborated by McCormick (¶ 9 (d))
and commanded by Freeman (¶ 9 (b)-(c))) didn't adhere
to 28 C.F.R. § 541.5 (a) (¶ 8 (c)) transparently shows
there couldn't be any rational reason for the difference in
treatment between Xiong and John Doe.
(g) McCormick chaired John Doe's disciplinary hearing for
his IR for allegedly committing 306.
(h) McCormick directed Xiong's disciplinary hearing for 2748929.
(i) McCormick, with direct knowledge of 28 C.F.R. § 541.7 (b)
through training, directed said hearing to guarantee a finding
of guilt through sheer malice. See ¶¶ 9 (d)-(f) & 2-9.
(j) Lepird and Avant, through training and informal communication
with U/T FPOs in conjunction with being aware of the
IDP, specifically 28 C.F.R. §§ 541.1, 541.5 (a), 541.7, as
FPOs who regularly participate in the UDC (versus other FPOs
who don't), still allowed Xiong to be found guilty of 2748929.
There is no other reason for Lepird and Avant to participate
in the aforementioned hearing with the aforementioned
knowledge to arrive at the conclusion they did other than
ill will as a direct result of what occurred at Team. See ¶¶ 2-7.

6

116 Freeman, Gambel, McCormick, Simmons, Lepird, Avant, Turnage, Alberts, and Scarantino violated Xiong's 1st amendment right to freedom of speech in the context of retaliatory compelled silence and speech since, among other things:

(a) Freeman enforced the Practice to punish Xiong for his speech activities (¶¶ 2-10) that set the tone for her entire team; in particular, Freeman clarified the clear message she sent to Xiong at Team the following day at A&O; that if prisoners at ERE FPC didn't conform to the expectations and preferences of ERE FPOs in conjunction with FBOP rules and regulations, prisoners will be sent to the SHU and subsequently transferred, These actions are specifically designed to silence and compel Xiong's speech activities, to prevent Xiong from speaking out and to coerce him to conform his speech activities to the preferences of ERE FPOs,

(b) Gambel utilized the Practice to punish Xiong for his speech activities by authoring 2748929 (¶¶ 2-8, 9(a)-(b)); conspiring with Simmons to produce a pretextual search of Xiong's personal property (¶ 13(a)-(f)); and participating in the retaliatory transfer of Xiong. (¶ 12 (a)-(b), (f), (h)-(i), These actions were specifically taken to silence Xiong from using any speech activities violating the Practice and to compel his speech activities to conform his speech activities to the preferences of ERE FPOs,

(c) McCormick utilized the Practice to punish Xiong for his

speech activities by corroborating 2748929 ($\mu\mu$ ¶¶ 2.8, 9
(a), (d)-(f))°; illegally participating in the 8-19-15 prison
disciplinary hearing to ensure Xiong is found guilty of
2748929 ($\mu\mu$ ¶ 10)°; applying illegal practices in the 9-9-
15 prison disciplinary hearing in deciding whether Xiong had
committed 305 ($\mu\mu$ ¶ 14)° ; and participating in the retaliatory
transfer of Xiong. See ¶ 12 (a)-(b), (f)-(i). These actions were
specifically taken to silence Xiong from using any speech
activities violating the Practice, and to compel his speech
activities to conform his speech activities to the
preferences of ERE FPOs.

(d) Simmons utilized the Practice to punish Xiong for his speech
activities by conspiring with Gambel to produce a pretextual
search of Xiong's personal property ($\mu\mu$ ¶ 13(a),(f))°, by authoring
a pretextual 2758590 when Xiong was legally allowed to
possess 3 cooked hamburgers ($\mu\mu$ Id, (c),(j))°; by participating
in the retaliatory transfer of Xiong ($\mu\mu$ ¶ 12(a)-(b), (f)-(h)-(i)°; and by
illegally confiscating his Sony radio for no FBOP number
which specifically violates P5 5580.08 § 1 (a)(201). These
actions were specifically taken to silence Xiong from
using any speech activities violating the Practice and to
compel his speech activities to conform to the preferences
of ERE FPOs.

(e) Lepird utilized the Practice to punish Xiong for his speech

8

activities by applying illegal practices in the 8-19-15
prison disciplinary hearing in deciding whether Xiong
had committed 306 (¶¶ 10 (j) ) ; by agreeing with
McCormick that if Xiong doesn't behave in a way that
doesn't offend ERE FPOs, adverse consequences would
result, like *determining whether Xiong would be appropriate
for prerelease custody through 18 U.S.C. §§ 3624 (c) and
3621 (b) or not and telling Xiong that his nonchalant
behavior is seen as disrespectful to Lepird and ERE FPOs
during a 8-19-15 conversation between Xiong, Lepird, and
McCormick that occurred after the aforementioned hearing
between approximately 10:00 a.m.-12:00 p.m. when Xiong
travelled to the office of McCormick and Lepird to obtain a
institutional level administrative remedy ; and by participating
in the retaliatory transfer of Xiong. See ¶13(a)-(b),(f)-(i).These
actions were specifically taken to silence Xiong from
using any speech activities violating the Practice and to
compel his speech activities to conform to the preferences
of ERE FPOs.

(f) Avant utilized the Practice to punish Xiong for his speech
activities by applying illegal practices in the 8-19-15 prison
disciplinary hearing in deciding whether Xiong committed
306 (¶¶ 10 (j) ) while illegally participating in said
hearing in direct violation of PS52 70.09:Ch.4(b) ¶3

*a higher-security prison transfer and

9

and participating in the retaliatory transfer of Xiong. See ¶ 12 (a)-(b), (f)-(i). These actions were specifically taken to silence Xiong from using any speech activities violating the Practice and to compel his speech activities to conform to the preferences of ERE FPOs.

(g) Turmage utilized the Practice to punish Xiong for his speech activities by applying illegal practices in the 9-9-15 prison disciplinary hearing in deciding whether Xiong had committed 305 (¶¶ ¶ 14) and participating in the retaliatory transfer of Xiong. These actions were specifically taken to silence Xiong from using any speech activities violating the Practice and to compel his speech activities to conform to the preferences of ERE FPOs.

(h) Alberts utilized the Practice to punish Xiong for his speech activities by being aware that the U/T was transferring Xiong because of the pretextual and oppressive circumstances that produced 2748929 and 2758590 on 9-15-15 during an administrative SHU round where Xiong asked Alberts if Scarantino would respond to Xiong's BP-9s and then held a conversation with Freeman about being transferred for the pretextual 2748929 and 2758590 that Freeman responded by stating Xiong had difficulty adjusting to a camp environment where Xiong replied that he wasn't able to adjust to the brand of oppression being implemented by Freeman that

Alberts was present for:

(i) Alberts was informed on 9-18-15 by Xiong that McCormick informed Xiong his A.R.s will go unanswered by Alberts and Scarantino and that McCormick wouldn't process said A.R.s as a direct result of the underlying unconstitutional conduct of 2748929 and 2758590. See ¶¶ 2-10, 12-13. Alberts denied this to Xiong but this response is directly contradicted by Alberts' informed inactions and awareness of the aforementioned conduct that simultaneously violates the IDP. This is further corroborated by the fact 835435 and 849624 was neither processed nor responded too via 28 C.F.R, § 542.11(a)(1)-(a)(4) and PS1330.18 (2011) § 5 (a)(1)-(a)(6) in conjunction with PS1330.18 (2011) §13.

(j) Alberts held another conversation with Xiong on 9-21-15 concerning the conduct of the FPOs involved with the underlying circumstances of 2748929 and 2758590 (see ¶¶ 2-10, 12, 14) that was brief since Alberts refused to discuss this and cut the conversation short after informing Xiong that Alberts didn't have time for this subject. Alberts left the SHU range at this time.

(k) Xiong decided to stop the captain to inform him of the unconstitutional circumstances of 2748929 and 2758590 that Alberts refused to listen to. After what seemed like 1-2 minutes into the conversation, Alberts returned to the SHU range and interrupted said conversation by informing the captain

11

that Xiong was crazy and to not listen to him. At this point, both the captain and Alberts left the SHU range.

(l) On 9-29-15, Alberts informed Xiong that Alberts would accept and process 835435 and 849624 during his final SHU round but never did.

(m) For the next 14 days, Alberts never conducted another SHU round. Xiong's retaliatory transfer occurred on 10-13-15.

(n) These actions (see ¶11 (h)-(m)) were specifically taken to silence Xiong from using any speech activities violating the Practice and to compel his speech activities to conform to the preferences of ERE FPOs.

(o) Scarantino utilized the Practice to punish Xiong for his speech activities through Scarantino's informed inactions and awareness of the unconstitutional circumstances in question (see ¶¶2-10, 11 (h)-(n), 12, 14) as described below.

(p) On 10-2-15, Xiong held his only conversation with Scarantino. Xiong asked Scarantino what his policy was concerning FPO retaliation. Scarantino asked Xiong what he meant. Xiong then explained that he was being transferred for unfounded IRs. Scarantino asked, "Wasn't Alberts looking into that for you?" Xiong replied that Alberts was part of the problem. Scarantino told Xiong Alberts would make his SHU round next week. Xiong then informed Scarantino the transfer would be done at that point. Scarantino looked at Xiong, shrugged. And then

walked away,

(q) Scarantino is informed and aware of the unconstitutional circumstances underlying 2748929 and 2758590 irrespective of his 10-2-15 conversation of Xiong because of P5-5270.11 (2011) § 7 (d) ¶ 5 and the fact Xiong written Scarantino a detailed BP-A0148 about said circumstances on the transfer.

(r) These actions were specifically taken to silence Xiong from using any speech activities violating the Practice and to compel his speech activities to conform to the preferences of ERE FPOs.

12. Freeman, Gambel, McCormick, Simmons, Lepird, Avant, Turnage, Alberts, and Scarantino violated Xiong's 1st amendment right, to thought, expression, verbal speech, and the right-to-petition the government for redress in the context of a retaliatory transfer since, among other things:

(a) Xiong utilized his freedom of thought, expression, verbal speech and/or right-to-petition the government for redress in the following circumstances that isn't prohibited by 28 C.F.R. § 541.3 in any context.

(b) Xiong utilized his protected speech at Team (¶¶ 2-9), during the hostile conversation with McCormick and Lepird on 8-19-15 (¶ 11(e)), the hostile and harassing conversations with Gamble (¶ 13 (a)·(b)·(d)·(e)·(h)), the hostile conversations with Simmons (¶ 13 (f) and (g)) in conjunction with

13

petitioning the government for redress on 2748929 (¶¶ 13); seeking the signature page from Gamble (¶¶ 13(a)-(b),(e),(h)); articulating to Lepird, McCormick, and Avant at the 8-19-15 prison disciplinary hearing why 2748929 is unfounded (¶¶ 2-10); articulating to McCormick and Turnage at the 9-9-15 prison disciplinary hearing why 2758590 is unfounded (¶ 14); articulating to Alberts why 2748929 and 2758590 is unfounded (¶ 11(b)-(l)); and articulating to Scarantino why 2748929 and 2758590 is unfounded. See ¶ 11(o)-(q).

(c) The Defendants utilized a retaliatory transfer as a direct result of Xiong utilizing his aforementioned 1st amendment rights.

(d) Every single instance Xiong elected to use his variety of 1st amendment rights as identified above, some unconstitutional conduct from Defendants occurred as a direct result. Said instances have occurred throughout a timeframe of 62 days, events that have accumulated to create the instant retaliatory transfer. 2 catalyst events demonstrate this.

(e) A series of events create one of these catalyst events. These series of events covers the time period between 9-7-15 through 10-13-15. See ¶¶ 13, 11, 14. The culmination of said events ultimately produced the instant retaliatory transfer. The actions of Defendants are all based on and/or derived from applying the practice on Xiong because of his speech activities. See ¶ 11.

(f) In particular, these series of events began when Xiong sought

14

the signature page of Team from Gamble (¶¶ 13(a)-(b)) that created the pretextual 2758590 within 24 hrs (¶¶ 13); a clandestine meeting of various FPOs of U/T (¶¶ 14(h)) preceding a prison disciplinary hearing within 24 hrs of 2758590 (¶¶ 14(h)), a stark departure from the events of pretextual 2748929 (¶¶ 2-7, 10); a predetermined decision of guilt during the "deliberation" of the aforementioned hearing and prior to its conclusion (¶¶ 14(e)-(f)); and a variety of actions and inactions from Freeman, Alberts, and Scarantino reinforcing, enforcing, and condoning the Practice and the unconstitutional conduct of Gamble, Simmons, McCormick, Avant, Lepird, and Turnage (¶¶ 11(h)-(r)) during Xiong's 34 day SHU stay that ensured the retaliatory transfer occurred.

(g) The other catalyst event precedes the second one by 26 days and covers the time period of 8-12-15 through 8-19-15. See ¶¶ 2-10, 11(a)-(c), (e)-(f). The unconstitutional conduct of Freeman, Gamble, McCormick, Lepird, and Avant during the events of said period is the motivating force and underlying reasons for the events that occurred in the second catalyst event.

(h) Said conduct perpetuated throughout said events as a direct result of FBOP culture that reinforced and ensured the enforcement of the Practice. The initiating event of the second catalyst event (¶¶ 13 (a)-(b)) directly demonstrates the link between the 2 catalyst

events and the participation of Simmons (UU ¶¶ 13, 11 (d)) ; McCormick (UU ¶ 14 (d) - (g)) ; Turnage (Id.) ; Avant (UU ¶ 14 (h)) ; Gamble (Id.) ; Lepird (Id.) ; and Freeman in the events leading up to the retaliatory transfer demonstrates the tight-knit culture of the FBOP that possesses the propensity to violate law, whether for one another or self-interest.

(i) The decision to transfer Xiong in a retaliatory manner was a decision that the U/T arrived at together, as Gambel states in the 9-18-15 EMS-409.051. Unit team members encompasses CCs, CMs, USs, UOs and UMs as team leader as identified in PS.5321.08 (2017). Through informed inaction, Alberts and Scarantino participated in the SHU, tue ¶ 12 (f).

13. Gambel and Simmons violated Xiong's 1st amendment right-to-petition the government for redress through retaliation since, among other things :

(a) On 9-7-15, Xiong requested his progress report from Gambel at approximately 2 p.m. and subsequently returned at 3 p.m. as Gambel instructed, where Xiong requested a copy of the 8-12-15 program review instead. When Xiong reviewed said copy, he noticed that the signature page of said review wasn't present.

(b) At this point, Xiong asked Gambel about obtaining said page, which threw Gambel off where he asked why Xiong wanted it, Xiong responded he is entitled to it. Gambel replied he didn't care Xiong wanted it but that he was curious why Xiong wanted

16

it as Gambel smiled and shrugged. Xiong stated he intended to defeat 2748929. This elicited Gambel to tell Xiong he didn't care whether Xiong beat 2748929 or not. Xiong stated he was sure Gambel did care. Gambel stated he needed to make a point since Xiong arrived late to Team. Xiong told Gambel that 2748929 wasn't necessary to prove a point and it could've been done verbally. Gambel smiled and told Xiong that Xiong was acting exactly how he was at Team. Xiong told Gamble he needed the signature page. Gamble wasn't willing to give Xiong said page.

(c) On 9-3-15, after eating lunch, Xiong returned to his assigned room to grab 18 C.F.R. §5 24.43 and discovered said room searched. He noticed his Sony "banana" Bumble Bee radio and 3 cooked burgers were missing.

(d) Xiong traveled to Gamble's office to show his entitlement to his copy of the signature page of Team. He seen Avant and asked if Gamble was in his office. Avant responded Gambel was. Prior to knocking on Gambel's office, Xiong observed Simmons having a conversation with Gamble. Xiong knocks, startling Simmons who attempted to secretly remove himself from Gambel's office through the adjacent door leading to Avant and Turnage's offices. After Simmons clandestine action, Gambel verbally authorized Xiong to enter.

(e) Xiong entered and demanded his copy of the signature page,

17

showing Gambel 28 C.F.R. §524.11. Gambel stated that a progress report isn't the same thing a program review after reading said C.F.R. and got up to exit his office for Avant. Xiong realized he grabbed the wrong C.F.R. as he reviewed it. Xiong told Gamble he'd return with the correct C.F.R. that prompted verbal harrassment from Gamble.

(f) As Xiong traveled to retreive 28 C.F.R. §524.43, he encountered Simmons and asked why his Sony radio was stolen. Simmons responded that Xiong's prisoner number wasn't engraved on said radio. Simmon's action violates P55580.08§1(a)(2011), which recinded that requirement 4 years ago.

(g) When Xiong entered the room assigned to him, Ramirez told Xiong Simmons told Ramirez that only Xiong's locker was searched.

(h) Xiong returned with 28 C.F.R. §524.43 and Gamble still refused the signature page in question and continued verbally harassing Xiong, calling Xiong stupid.

(i) Xiong subsequently emailed Scarantino to (1) digitally document the aforementioned events and (2) to possibly prevent further retaliation by FPC.

(j) Xiong subsequently looked to the CCs for alternative ways to acquire the aforementioned page and located Lepird who was present with Simmons. As Xiong attempted to talk to Lepird, Simmons interrupted and harassed Xiong about not asking for the burgers Simmons stole. Xiong attempted to explain why he didn't when

Simmons interrupted to state 2758590 was forthcoming.

(k) Gambel and Simmons both took the steps to retaliate against Xiong with a malicious locker search, hostile harassment, stealing Xiong's property, and creating a pretextual 2758590 for trying to obtain the signature page in question. These actions all occurred within 24 hrs of Xiong's initial effort. See ¶ 13(a)-(j).

(l) It's clear Gambel and Simmon's unconstitutional clandestine actions are a direct response to Xiong petitioning the government for redress on 2748929. Id.

14. On 9-9-15, during the 2758590 prison disciplinary hearing, McCormick and Turnage violated Xiong's 5th amendment right to equal protection in the context of selective enforcement, a class of one, since, among other things:

(a) Xiong was issued 2758590 for allegedly committing 305 for allegations of stealing burgers that were unauthorized on 9-8-15 by Simmons.

(b) A federal holiday was observed on 9-7-15 at ERE FPC. Every single ERE FPC prisoner was authorized to bring holiday food back from the ERE FPC cafeteria, Xiong was similarly situated to every single ERE FPC prisoner on 9-7-15. A significant amount of ERE FPC prisoners Xiong observed brought food back from the holiday meal, as Xiong had.

(c) Xiong didn't steal the hamburgers that Simmons alleged Xiong possessed. Simmons alleged 6 uncooked beef patties in

2758590. In reality, it was 3 cooked beef patties. FPOs are required to author IRs as 108 prohibited acts when prisoners are found with raw meat in their possession. The fact this didn't occur undermines Simmons' credibility and the validity of 2758590.

(d) Any UDC is required to adhere to 28 C.F.R. §§ 541.1 and 541.7. Neither McCormick nor Turnage adhered to either C.F.R.. Xiong explained that he didn't steal the burgers in question; that said burgers were cooked and not raw; that there existed at least 4 signs strategically placed around the ERE FPC instructing prisoners to bring their bowls to the holiday meal; that every federal holiday, Melsek allowed the ERE FPC prisoners to possess holiday food outside of the ERE FPC cafeteria (that McCormick and Turnage acknowledge); that a significant amount of ERE FPC prisoners (if not all) did the exact same thing as Xiong on 9-7-15; that Melsek observed Xiong place the alleged contraband in question inside his bowl, then get up from the table and exit the ERE FPC cafeteria; and that if Melsek didn't allow ERE FPC prisoners to possess holiday food, Xiong wouldn't have possessed it. Xiong further stated the burgers in question weren't even present to credit Xiong and discredit Simmons.

(e) As McCormick and Turnage "deliberated" Xiong's innocence outside of his presence, Lt. Ramirez arrived with Simmons in tow to arrest Xiong and place him in SHU. Simmons

20

enthusiastically pointed to Xiong in conjunction with verbally identifying to Lt. Ramirez who Xiong was. Xiong was arrested.

(f) Immediately upon being arrested, McCormick and Turnage's "deliberation" ceased and Xiong, Lt. Ramirez, and Simmons entered the room the prison hearing occurred. McCormick immediately informed Simmons he couldn't be present (a reference to McCormick's own illegal participation in the 8-19-15 disciplinary hearing). McCormick and Turnage told Xiong they found him guilty and that Xiong would be placed in SHU and transferred.

(g) Both McCormick and Turnage held a conversation with Xiong about his speech activities during Team. McCormick told Xiong no U/T wanted Xiong at ERE FPC and only Dow wanted Xiong to stay. Turnage asked Xiong whether a FPC setting was difficult to adjust too. Xiong told Turnage if that meant being retaliated against for speaking out and doing completely legal activities to redress said retaliation, then yes. McCormick asked Xiong why he couldn't just conform to the preferences of ERE FPC's even when they were wrong and Xiong wasn't. Xiong identified his values.

(h) Prior to the 9-9-15 disciplinary hearing, Xiong was looking for McCormick as instructed by Dow (who affirmed Xiong was being transferred prior to the start of said hearing) and subsequently Gambel.° Xiong observed McCormick,

Turnage, Avant, Gambel, Simmons, Lepird, and Freeman huddling clandestinly in Avant's office as Xiong went looking for McCormick. Xiong observed them for several seconds and then proceeded towards them when they finally noticed Xiong. McCormick and Turnage exited said office towards Xiong. Xiong asked McCormick why he wanted Xiong. McCormick informed Xiong this was his UDC hearing.

(i) The 2758590 disciplinary hearing was conducted within 24 hours of 2758590 being issued versus the 2748929 disciplinary hearing taking the max 5 working days as authorized by 28 C.F.R. § 541.5.

(j) 305 was selectively enforced against Xiong in a spiteful manner as a direct result of Xiong's speech activities at Team in conjunction with the fact Xiong legally possessed 3 cooked burgers versus illegally possessing 6 raw burgers. The invalidity of 2758590 illustrates there isn't any rational reason for it.

Pao Hue Yeng Xiong
F.C.C. Yazoo City-Medium
P.O. Box 5666
Yazoo City, MS 39194

Certificate of Service

I certify, that on July 21, 2020, I placed a true and correct copy of the attached! * ** ***

— Notice Of Change Of Address [for 5:17-cv-00872-R]
— Notice Of Change Of Address
— Court-Issued IFP Application
— Court-Issued Bivens Complaint and Cause Of Action

in the U.S. mail, in a properly-addressed envelope, w/ 1st class postage duly paid & affixed to the envelope, using the FBOP legal mail system at the instant facility and thereby invoking Price v. Philpot, 420 F.3d 1158, 1164-1165 (10th Cir. 2005) w/ the envelope addressed to:

William J. Holloway Jr. United States Courthouse
200 Northwest Fourth Street
Suite 1210
Oklahoma City, OK   73102-3092

I declare under penalty of perjury the foregoing is true and correct.

* — Abbreviation Legend
** — Notice On IFP Determination
*** — Notice On Prison Account & Certification

Pao Hue Yeng Xiong
F.C.C. Yazoo City - Medium
P.O. Box 5666
Yazoo City, MS 39194